UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIANNA M,[1] | ) | CIVIL ACTION NO. 4:22-CV-0376 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| KILOLO KIJAKAZI | ) | |
| *Acting Social Security Commissioner,* | ) | |
| Defendant | ) | |

## MEMORANDUM OPINION

## I.   INTRODUCTION

Plaintiff Brianna M., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying her applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §405(g) and 42 U.S.C. §1383(c)(3).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

parties' briefs, the Commissioner's final decision, and the relevant portions of the certified administrative transcript, the court finds the Commissioner's final decision is supported by substantial evidence. Accordingly the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On January 7, 2019, Plaintiff protectively filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. (Admin. Tr. 15; Doc. 13-2, p. 16).   In these applications, Plaintiff alleged she became disabled on August 31, 2014, when she was 23 years old, due to the following conditions: depression, rheumatoid arthritis-seronegative, and learning disabled. (Admin. Tr. 282; Doc. 13-6, p. 23). Plaintiff alleges that the combination of these conditions affects her ability to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, complete tasks, concentrate, understand, follow instructions, use her hands and get along with others. (Admin. Tr. 296, 342; Doc. 13-6, pp. 37, 83). Plaintiff has at least a high school education. (Admin. Tr. 27; Doc. 13-2, p. 28). Plaintiff has no past relevant work. (Admin. Tr. 27; Doc. 13-2, p. 28).

On October 29, 2019, Plaintiff's applications were denied at the initial level of administrative review and On September 2, 2020 upon reconsideration. (Admin. Tr. 139-147, 153-160; Doc. 13-4, pp. 2-10, 16-23). On September 18, 2020, Plaintiff requested an administrative hearing. (Admin. Tr. 161; Doc. 13-4, p. 24).

On December 16, 2020, Plaintiff, assisted by her counsel, appeared and testified during a hearing before Administrative Law Judge Gwendolyn M. Hoover (the "ALJ"). (Admin. Tr. 14-15; Doc. 13-2, pp. 15-16). On April 12, 2021, the ALJ issued a decision denying Plaintiff's applications for benefits. (Admin. Tr. 12-35; Doc. 13-2, pp. 13-36). On April 23, 2021, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 215-217; Doc. 13-4, pp. 78-80).

On February 16, 2021, the Appeals Council denied Plaintiff's request for review.  (Admin. Tr. 1-6; Doc. 13-2, pp.2-7).

On March 15, 2022, Plaintiff filed a complaint in the district court. (Doc. 1). In the complaint, Plaintiff alleges that the ALJ's decision denying the applications is not supported by substantial evidence, and improperly applies the law. (Doc. 1). As relief, Plaintiff requests that the court reverse the decision of the Appeals Council as it relates to their denial of the request for review of the decision of the ALJ[2] and award Plaintiff benefits effective August 31, 2014, the alleged onset date for her claims. (Doc. 1, p. 8).

---

[2] "No statutory authority (the source of the district court's review) authorizes the court to review the Appeals Council decision to deny review." *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). The Court construes Plaintiff's request as a request to reverse the administrative decision of the ALJ or remand Plaintiff's case for a new hearing.

On May 19, 2022, the Commissioner filed an answer. (Doc. 12). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 12). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 13).

Plaintiff's Brief (Doc. 17), and the Commissioner's Brief (Doc. 23) have been filed.  Plaintiff did not file a reply brief. This matter is now ready to decide.

## III.   STANDARDS OF REVIEW

Before looking at the merits of this case, it is helpful to restate the familiar legal principles governing Social Security Appeals.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[3] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[4] Substantial evidence is

---

[3] *See* 42 U.S.C. § 405(g); 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[4] *Pierce v. Underwood,* 487 U.S. 552, 565 (1988).

less than a preponderance of the evidence but more than a mere scintilla.[5] A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence.[6] But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[7] In determining if the Commissioner's decision is supported by substantial evidence the court may consider any evidence in the administrative record.[8] However, the claimant and Commissioner are obligated to support each contention in the argument section of their briefs with specific reference to the page of the record relied upon.[9]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135

---

[5] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[6] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

[7] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[8] *Leslie v. Barnhart*, 304 F. Supp. 2d 623, 627 (M.D. Pa. 2003).

[9] L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[10]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[11] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[12]

---

[10] *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019).

[11] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[12] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

> In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[13]

### B.   STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."[14] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[15] To receive benefits under Title II of the Social Security Act,

---

[13] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[14] 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

[15] 42 U.S.C. § 423(d)(2)(A); 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 404.1505(a); 20 C.F.R. § 416.905(a).

a claimant must also show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured.[16] Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's eligibility for supplement security income benefits" under Title XVI of the Social Security Act.[17]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[18] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[19]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations

---

[16] 42 U.S.C. § 423(a); 20 C.F.R. § 404.131(a).
[17] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 10778330, at *1 (M.D. Pa. Mar. 22, 2017).
[18] 20 C.F.R. § 404.1520(a); 20 C.F.R. § 416.920(a).
[19] 20 C.F.R. § 404.1520(a)(4); 20 C.F.R. § 416.920(a)(4).

caused by his or her impairment(s)."[20] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[21]

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[22]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[23] With these standards in mind we turn to the specifics of this appeal.

## IV.   DISCUSSION

Plaintiff raises the following issues in her brief:

(1)   "Whether the Administrative Law Judge erred and abused her discretion by failing to consider the limitations in Plaintiff's residual functional capacity from her rheumatoid arthritis, depression, anxiety and intellectual disability, all of which were determined by the Administrative Law Judge to be severe impairments?" (Doc. 17, p. 1).

---

[20] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 404.1520(e); 20 C.F.R. § 404.1545(a)(1); 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).
[21] 20 C.F.R. § 404.1545(a)(2); 20 C.F.R. § 416.945(a)(2).
[22] 42 U.S.C. § 423(d)(5); 42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 404.1512(a); 20 C.F.R. § 416.912(a); *Mason*, 994 F.2d at 1064.
[23] 20 C.F.R. § 404.1512(b)(3); 20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

(2) "Whether the Administrative Law Judge erred and abused her discretion in failing to consider the limitations in Plaintiff's residual functional capacity with regards to her fibromyalgia, foot, knee and ankle issues, pain in her shoulders, neck, lumbar spine and a significant limitations [sic] with regard to Plaintiff's wrist, which were either not referenced at all by the Administrative Law Judge in her decision, or were considered to be non-severe, despite causing more than a minimal limitation regarding Plaintiff's activities of daily living?" (Doc. 1, pp. 1-2).

(3) "Whether the Administrative Law Judge erred and abused her discretion in setting forth his [sic] determination of Plaintiff's residual function capacity in light of the opinions regarding Plaintiff's limitations from the Consultative Exam Physicians, Dr. Kneifati and Dr. Lederman, despite the Administrative Law Judge giving weight to some of their opinions, as well as the failure of the Administrative Law Judge to properly consider the results of the Functional Capacity Evaluation?" (Doc. 17, p. 2).

We construe Plaintiff's brief as raising the following issues:

(1) Whether the ALJ erred and abused her discretion at Step 2 by failing to find fibromyalgia, foot, knee and ankle issues, pain in Plaintiff's shoulders, neck, lumbar spine, and significant limitations with regards to Plaintiff's wrist as severe impairments.

(2) Whether the ALJ erred and abused her discretion in her persuasiveness determinations regarding the medical opinions of Dr. Kneifati, Dr. Lederman, and the functional capacity evaluation by Mr. Riggi.

(3) Whether the ALJ's RFC is supported by substantial evidence.

We begin our analysis by summarizing the ALJ's findings, then will address whether substantial evidence supports the ALJ's decision.

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATIONS

In her April 2021 decision, the ALJ found that Plaintiff met the insured status requirement of Title II of the Social Security Act through September 30, 2020. (Admin. Tr. 16; Doc. 13-2, p. 17). Then, Plaintiff's applications were evaluated at steps one through five of the sequential evaluation process.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between August 31, 2014 (Plaintiff's alleged onset date) and September 30, 2020 (Plaintiff's date last insured) ("the relevant period"). (Admin. Tr. 16-18; Doc. 13-2, pp. 17-19). At step two, the ALJ found that, during the relevant period, Plaintiff had the following medically determinable severe impairments: rheumatoid arthritis, depression, anxiety, and intellectual disability and the following non-severe impairments: glaucoma and degenerative myopia. (Admin. Tr. 18; Doc. 13-2, p. 19). At step three, the ALJ found that, during the relevant period, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Admin. Tr. 18-20; Doc. 13-2, pp. 19-21).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ found that, during the relevant period, Plaintiff retained the RFC to engage in light work as defined in 20 C.F.R. § 404.1567(b) and 20 C.F.R. § 416.967(b) subject to the following additional limitations:

> [T]he claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) with occasionally [sic] lift and/or carry up to twenty pounds and frequent lift and/or carry up to ten pounds, stand and/or walk for about six hours and sit for about six hours in an eight-hour workday with normal breaks. She can frequently handle bilaterally. She is able to carry out short, simple instructions, to make simple decisions, to accept instructions and carry out directives, and to meet the basic mental demands of simple routine tasks on a sustained basis. She is not able to perform work at a production rate pace.

(Admin. Tr. 20-21; Doc. 13-2, pp. 21-22).

At step four, the ALJ found that, during the relevant period, Plaintiff had no past relevant work. (Admin. Tr. 27; Doc. 13-2, p. 28). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 27-28; Doc. 13-2, pp. 28-29). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing and cited the following three (3) representative occupations: ticket taker, DOT# 344.667-010, potato chip sorter, DOT# 526.687-010, and cleaner, housekeeping, DOT# 323.687-014. (Admin. Tr. 28, 67; Doc. 13-2, pp. 29, 68).

**B.**     **WHETHER THE ALJ ERRED AND ABUSED HER DISCRETION AT STEP 2 BY FAILING TO FIND FIBROMYALGIA, FOOT, KNEE AND ANKLE ISSUES, PAIN IN PLAINTIFF'S SHOULDERS, NECK, LUMBAR SPINE, AND SIGNIFICANT LIMITATIONS WITH REGARDS TO PLAINTIFF'S WRIST AS SEVERE IMPAIRMENTS**

Plaintiff argues that the ALJ erred at Step 2 by failing to find that Plaintiff's "fibromyalgia, foot, knee and ankle issues, pain in her shoulders, neck, lumbar spine, and significant limitations with regards to her wrist" were severe impairments. (Doc. 17, pp. 20-23). Plaintiff appears to argue that this was not a harmless error as the ALJ also failed to consider these disorders and the limitations they caused in crafting the RFC. *Id*. Plaintiff states:

> The ALJ makes little or no mention of Claimant's diagnosed and treated fibromyalgia, foot, knee and ankle issues, and pain in her shoulders, neck, lumbar spine and wrists, including evidence concerning significant limitations with regards to Claimant's wrist, confirmed by X-rays of the hand that found worsening deformity associated with progressive inflammation (Admin Tr. 668-673), despite these conditions being referenced in Claimant's medical records and testimony, and causing more than a slight limitations in terms of Claimant's activities of daily living. (See discussion above).

> The ALJ also failed to consider several of the documented and diagnosed issues regarding the above-referenced impairments, and how these impairments and issues related thereto would impact her reaching, handling, lifting, carrying, feeling and fingering, due to issues with both Claimant's shoulders and wrists, as the medical record in this matter supports more restrictions in these areas than those noted by the ALJ. The record confirms that Claimant has significant issues using her hands to do simple things like hold a knife, hold a pencil, or grip things normally, which should have been considered more fully in terms of the use of Claimant's bilateral upper extremities. In addition, as noted above, based upon the medical record and Claimant's testimony it is

reasonable that these impairments would have some impact upon Claimant's ability to remain on task, need for unscheduled breaks, and rate of absenteeism, as well as her ability to walk/sit/stand, and use her arms and hands for reaching, lifting, carrying, handling, feeling, fingering.

Based upon the above, these conditions should have been considered to be severe, as they have more than a minimal effect upon Claimant, and should have been factored into her RFC. Even if the ALJ had not considered these conditions to be severe, they should have been analyzed by the ALJ, as even limitations from non-severe impairments need to be considered in setting forth Claimant's RFC, particularly due to the number and nature of these impairments. The lack of reference to these disorders in the ALJ's decision is further confirmation that the ALJ did not consider these disorders, or limitations related thereto, in setting forth Claimant's RFC.

(Doc. 17, pp. 21-23).

The Commissioner argues that the ALJ reasonably assessed Plaintiff's severe and non-severe impairments at step two. (Doc. 23, pp. 16-21). The Commissioner argues further that to the extent the ALJ should have found those impairments to be severe it is harmless error because the ALJ found in Plaintiff's favor at step two in finding Plaintiff did have at least one severe impairment. (Doc. 23, pp. 17-18). By finding Plaintiff to have a severe impairment, the ALJ would have considered all impairments, both severe and non-severe, during the next steps of the sequential evaluation process. (Doc. 23, p. 17). The Commissioner argues that the ALJ's decision reflects that she did consider these impairments and any limitations they caused throughout her decision and when crafting the RFC. (Doc. 23, pp. 19-21).

Though Plaintiff did not cite to it in her brief, the Court found a listed 'diagnosis' of fibromyalgia starting in March 2018 and continuing through August 2018 in the notes of Plaintiff's physical therapist. (Admin. Tr. 447-608; Doc. 13-7, pp. 49-209). However, Plaintiff did not allege fibromyalgia as a basis for her becoming disabled. Nor was Plaintiff asked about fibromyalgia during her testimony at the hearing in front of the ALJ. While the ALJ did not make an explicit finding as to whether Plaintiff's fibromyalgia was a medically determinable impairment, even if this was an error, that error was harmless. Social Security Ruling S.S.R. 12-2p provides guidance on how a medically determinable impairment of fibromyalgia is shown and how fibromyalgia is evaluated.[24] The Ruling provides:

> FM [fibromyalgia] is an MDI [medically determinable impairment] when it is established by appropriate medical evidence. FM can be the basis for a finding of disability.
>
> > I. What general criteria can establish that a person has an MDI of FM? Generally, a person can establish that he or she has an MDI of FM by providing evidence from an acceptable medical source. A licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam . . . .[25]

---

[24] S.S.R. 12-2p, 2012 WL 3104869.
[25] S.S.R. 12-2p(I), 2012 WL 3104869, at *2.

The Ruling goes on to provide two sets of criteria for determining whether fibromyalgia is a medically determinable impairment. Fibromyalgia is a medically determinable impairment "if the physician diagnosed [fibromyalgia] and provides the evidence [ ] described in section II. A. or section II. B., and the physician's diagnosis is not inconsistent with the other evidence in the person's case record."[26] The section II. A. and II. B. provide the claimant can provide evidence demonstrating: 1) a history of widespread pain, 2) at least eleven positive tender points, and 3) evidence that rules out other disorders as the cause; or 1) a history of widespread pain, 2) repeated manifestations of six or more fibromyalgia symptoms or co-occurring conditions, and 3) evidence that rules out other disorders as the cause.[27]

Remand for an analysis of whether Plaintiff had a medically determinable impairment of fibromyalgia is not reasonably likely to result in a different outcome. There is no evidence in the record such that any reasonable evaluator could find a medically determinable impairment of fibromyalgia based on the applicable Social Security Ruling. Plaintiff does not provide or cite to the necessary evidence from an acceptable medical source that would allow an ALJ to find fibromyalgia to be a

---

[26] S.S.R. 12-2p(II), 2012 WL 3104869.
[27] S.S.R. 12-2p(II)(A) and (B), 2012 WL 3104869.

medically determinable impairment in light of Plaintiff's medical record.[28] Additionally, if the ALJ "cannot find that the person has an MDI of FM but there is evidence of another MDI, [they] will not evaluate the impairment under this Ruling. Instead [they] will evaluate it under the rules that apply for that impairment."[29] In Plaintiff's case there was evidence of another medically determinable impairment that caused Plaintiff's pain. The ALJ evaluated arthritis, finding it to be a severe medically determinable impairment. (Admin. Tr. 18, Doc. 13-2, p. 19). Thus there is no reasonable probability remand would result in a different outcome and no remand is warranted on this basis.

As to Plaintiff's "foot, knee and ankle issues, pain in her shoulders, neck, lumbar spine, and significant limitations with regards to her wrist," the ALJ did not identify any of these issues as any type of stand-alone impairment in her decision. (Doc. 17, pp. 20-23). Instead, it appears the ALJ considered these issues to be "symptoms" that she addressed in the RFC explanation. (Admin. Tr. 21-24; Doc. 13-2, pp. 22-25).

The ALJ discusses Plaintiff undergoing physical therapy for pain and weakness in her shoulders, neck, wrists, knees, and ankles. (Admin. Tr. 22; Doc. 13-2, p. 23). The ALJ noted that Plaintiff described extreme pain in her knees and feet,

---

[28] S.S.R. 12-2p(I), 2012 WL 3104869.
[29] S.S.R. 12-2p(II), 2012 WL 3104869.

swelling in her knees, feet and wrist with activity, difficulty using her hands, wrists and fingers that gives her trouble holding things, eating with a fork and prevents her from using buttons and zippers, and decreased range of motion in her arms, wrists, and hands preventing her from driving. (Admin. Tr. 21; Doc. 13-2, p. 22). The ALJ also noted Plaintiff first presented to rheumatology with pain in her wrists, elbows, knees and other joints, and that at her March 2019 rheumatology appointment an x-ray revealed worsening deformity associated with progressive inflammation and that subsequent rheumatology examinations found some limitations in the wrists with normal strength. (Admin. Tr. 22-23; Doc. 13-2, pp. 23-24). The ALJ acknowledged that during her independent consultative examination with Dr. Kneifati, Plaintiff reported generalized joint pain that was worse in her hands and wrists, knee pain that worsened with activity, and tenderness over her cervical and lumbar spine, elbows, wrists, knees, and ankles. (Admin Tr. 23; Doc. 13-2, p. 24). The ALJ likewise acknowledged that at the independent functional capacity evaluation Plaintiff reported pain in her feet, knees, lower back, shoulders and wrists that limited her ability to perform daily tasks. (Admin. Tr. 23; Doc. 13-2, p. 24). The ALJ also noted that at her February 2020 rheumatology appointed Plaintiff reported no pain or tenderness and reported walking long distances without knee pain and resolved hand pain. (Admin. Tr. 23; Doc. 13-2, p. 24).

Then, when explaining why she was persuaded by the opinions of Dr. John Simmons, MD, and Jennifer Wilson, DO, the State Agency Consultants, the ALJ stated:

> The longitudinal treatment history by rheumatology, physical therapy, and primary care provider indicated significant improvement in her rheumatoid arthritis symptoms including near normal strength and ranges of motion in the upper and lower extremities. The wrist and hand symptoms resolved with an indication of no hand pain at the most recent rheumatology visit. The primary care provider found the claimant able to walk without difficulty, and the claimant indicated she could walk long distances without knee pain.

(Admin Tr. 25-26; Doc. 13-2, pp. 26-27). The ALJ "considered the claimant's statements concerning the intensity, persistence, and limiting effects of the symptoms in accordance with SSR 16-3p and [ ] found that the statements are not consistent with the record." (Admin Tr. 25; Doc. 13-2, p. 26). Further, the ALJ also explained:

> While the record is sufficient to establish the claimant's medically determinable impairments, the medical evidence of record does not support the degree of symptoms—pain, weakness, joint swelling, decreased range of motion, balancing issues, depressed mood, anxiousness, lack of focus, and problems following conversations— and resulting functional limitations alleged by the claimant.

(Admin Tr. 27; Doc. 13-2, p. 28).

Thus, even if the ALJ should have labeled Plaintiff's "foot, knee and ankle issues, pain in her shoulders, neck, lumbar spine, and significant limitations with regards to her wrist," as impairments at Step 2, any error is harmless because these

issues were considered as symptoms of Plaintiff's arthritis. (Doc. 17, pp. 20-23). There is no basis for remand on this point.

As to Plaintiff's contention that "these impairments would have some impact on Claimant's ability to remain on task, need for unscheduled breaks, and rate of absenteeism." (Doc. 17, p. 22). I will address this below in Section IV(D).

### C.   WHETHER THE ALJ ERRED AND ABUSED HER DISCRETION IN HER PERSUASIVENESS DETERMINATIONS REGARDING THE MEDICAL OPINIONS OF DR. KNEIFATI, DR. LEDERMAN, AND THE FUNCTIONAL CAPACITY EVALUATION BY MR. RIGGI

Plaintiff argues that the ALJ erred and abused her discretion by "failing to afford proper weight" to the medical opinions of Dr. Kneifati (a consultative examiner), Dr. Ledermann (a consultative examiner), and Mr. Riggi (an occupational therapist and functional capacity evaluator). (Doc. 17, pp. 23-27). Plaintiff cites to outdated Social Security regulation 20 C.F.R. §404.1527(c)(4) (and presumably 20 C.F.R. § 416.927(c)(4)) and outdated case law to support her assertion that "the ALJ must follow a claimant's doctor's opinion if it is well supported by medical findings and is not inconsistent with other substantial medical evidence that is in the record." (Doc. 17, p. 23).

Plaintiff's application was filed on January 7, 2019, meaning 20 C.F.R. §§ 404.1520c and 416.920c are the applicable regulations governing how an ALJ considers medical opinions and prior administrative medical findings. Therefore I

construe Plaintiff's challenges that the ALJ did not "afford proper weight" to the medical opinions of Dr. Kneifati, Dr. Ledermann, and Mr. Riggi as challenges to the ALJ's persuasiveness findings of these opinions.[30]

### i.    Dr. Kneifati

Regarding the opinion of Dr. Kneifati, a Consultative Examiner, Plaintiff argues:

> The ALJ erred and abused her discretion by failing to properly give weight to the opinions of the Consultative Exam Physician, Dr. Kneifati, who is the only medical source provided limitations for Claimant that are based upon an actual physical examination of Claimant (other than the Functional Capacity Evaluation), who was engaged by Social Security for the purposes of determining Claimant's physical limitations, and whose limitations are supported by the medical record and Claimant's testimony, and which should have been considered, including findings from Dr. Kneifati that Claimant had noticeable stiffness and pain in her elbows and wrists, limited motion and pain in her knees, and measured limited range of motion in her wrists, elbows, ankles and cervical spine. (Admin Tr. 874- 887). The ALJ then failed to properly consider the opinions of Dr. Kneifati, although the ALJ assigned partial weight to the opinions of Dr. Kneifati to the extent that his opinions agreed with her findings regarding Claimant's RFC, without explaining how his additional findings regarding Claimant's limitations, as noted above, were not persuasive in terms of his overall opinion. (Admin Tr. 874-887).

(Doc. 17, pp. 24-25).

---

[30] I also note that Plaintiff cites to 20 C.F.R. § 404.1515a to highlight how the ALJ considers opinions from state agency medical or psychological consultants. (Doc. 17, p. 23). This appears to be a typographical error with Plaintiff meaning to cite 20 C.F.R. § 404.1513a.

In response, the Commissioner argues that the ALJ found Dr. Kneifati's opinion to be partially persuasive, noting that it was consistent with the longitudinal treatment records in some ways, but explaining that it was inconsistent with the longitudinal treatment records in others. (Doc. 23, pp. 26-27). The Commissioner asserts the ALJ adequately explained why she found Dr. Kneifati's opinion to be only partially persuasive. *Id.*

I agree that the ALJ adequately explained why she found Dr. Kneifati's opinion to be partially persuasive. The ALJ indicated she was "partially persuaded by [Dr. Kneifati's] medical opinion, noting the longitudinal treatment records showed improvement in rheumatology symptoms and good tolerance of the medication regimen." (Admin Tr. 26; Doc. 13-2, p. 27). The ALJ then explained why she found the standing and walking limitation in Dr. Kneifati's unsupported, an explanation of why she was only partially persuaded by Dr. Kneifati's opinion. The ALJ wrote: "[Plaintiff] was able to walk long distances without knee pain, which is [sic] does not support the standing and walking limitation in Dr. Kneifati's medical opinion." *Id.* This is not a case where the ALJ cherry-picked evidence supporting her determination and ignored evidence that was contrary to it. Instead, the ALJ identified the portion of Dr. Kneifati's medical opinion she was not persuaded by and provided an "adequate, articulated rationale" explaining why she found that portion to be unsupported and thus why she found the opinion to be only partially

persuasive.[31] An ALJ is entitled to credit parts of a medical opinion and not the whole, and craft an RFC using different parts of the multiple opinions.[32]  Remand is therefore not warranted on this basis.

### ii.    Dr. Ledermann

Dr. Ledermann issued two opinions about Plaintiff's mental-health related limitations. (Admin Tr. 865-871, 928-935; Doc. 13-7, pp. 467-473, 530-537). The ALJ found this opinion "persuasive." (Admin Tr. 27; Doc. 13-2, p. 28). Plaintiff argues:

> The ALJ also erred and abused her discretion by failing to afford proper weight to the opinions of the Psychological Consultative Examiner, Dr. Lederman [sic], whose findings would limit Claimant to unskilled work after her intellectual function examination (she found that Claimant had marked limitations in her ability to carry out complex instructions or make judgments on complex work-related decisions, and Claimant has a Full Scale IQ (FSIQ) of 67, which is noted to be in the extremely low range), with significant deficits in the areas of visual based tasks, reasoning, and 4th percentile rankings in areas of verbal comprehension and working memory, which should have been evaluated under the Listing Under 12.05, as the ALJ should have weighed, evaluated and considered Claimant's FSIQ given a score of 67, as there is no indication that that ALJ did so in the record. (Admin Tr. 865-871, and 928-935). Dr. Lederman's [sic] report also contained the following indications regarding Claimant, which were also not incorporated into the ALJ's RFC: (1) trouble with anxiety and concentration, (2) impaired memory, attention and concentration, and (3) below average intellectual functioning. (Admin. Tr. 865-871).

---

[31] *Mercado v. Kijakazi*, No. 1:21-CV-365, 2022 WL 4357484, at *15 (M.D. Pa. September 20, 2022).

[32] *Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).

The ALJ should have considered Claimant's measured Full Scale IQ by looking at the school records that were supplied, many of which confirmed that Claimant was functioning well below the average range with regards to her thinking and reasoning shills, the need for occupational preparation skills, the need for daily living skill instruction, and ongoing held with personal relationships, all of which have an impact upon Claimant ability to engage in work-related activities. (Admin Tr. 268 and 271). Instead, the decision from the ALJ contains barely any mention of Claimant's learning disability, special education or IEP Plans when evaluating Claimant's Full Scale IQ Score, despite the fact that these records are the exact type of materials which the ALJ should have looked under when evaluating Claimant's severe impairments under the Listing Under 12.05: Intellectual Disorder. Specifically, the record in this matter establishes the B criteria, with a Full Scale IQ Score under 70, with significant deficits in Claimant's ability to understand, remember and apply information, as shown by the testing from Dr. Lederman [sic] and the IEP records, as well as the ability to concentrate, persist and maintain pace, as shown by her inability to be able to handle even a part-time job cleaning tables, and there is evidence that this disorder demonstrates and support that this disorder began prior to Claimant reaching age 22.

(Doc. 17, pp. 25-26).

The Commissioner argues in response that the ALJ addressed Dr. Ledermann's reports and opinions, found them persuasive, and that the ALJ did account for Dr. Ledermann's opinions that Plaintiff had a marked limitation in her ability to carry out complex instructions and make judgments on complex work-related decisions. (Doc. 23, p. 27). The Commissioner also argues that the ALJ did incorporate Plaintiff's reported anxiety and difficulty concentrating and Dr.

Ledermann's opinions finding impaired memory, attention, and concentration and below average intellectual functioning in the RFC. *Id*.

Plaintiff seems to allege the ALJ did not evaluate her under Listing 12.05. (Doc. 17, pp. 25-26). The ALJ wrote: "I have evaluated depression under Listing 12.04, anxiety under Listing 12.06, and learning disorder under Listing 12.11 . . . The severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of Listing 12.04, 12.05, 12.06, and 12.11." (Admin. Tr. 19; Doc. 13-2, p. 20). While the ALJ did not include Listing 12.05: Intellectual Disability in the initial list of listings she cited, she then stated that Plaintiff "did not meet or medically equal the criteria of Listing . . . 12.05" indicating she did evaluate Plaintiff under the criteria of Listing 12.05.[33] *Id*.

---

[33] To the extent the ALJ did not explicitly evaluate Plaintiff under Listing 12.05, the Paragraph B criteria for that Listing requires that the individual have "significant deficits in adaptive functioning currently manifested by extreme limitation of one, or marked limitation of two" of the four areas of mental functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 § 12.05(B). The Paragraph B requirement for Listings 12.04, 12.06, and 12.11 is essentially the same, requiring an "extreme limitation of one, or marked limitation of two" of the four areas of mental functioning. 20 C.F.R. § Pt. 404, Subpt. P, App. 1 §§ 12.04(B), 12.06(B) and 12.11(B). The ALJ explicitly evaluated the Paragraph B criteria. (Admin Tr. 19-20; Doc. 13-2, pp. 20-21). Even if the ALJ did not explicitly evaluate Plaintiff under Listing 12.05 the issue is moot as the ALJ found Plaintiff did not fulfill the Paragraph B criteria, a requirement to meet Listing 12.05.

Plaintiff takes issue with the ALJ's evaluation of whether the Paragraph B criteria were met. (Doc. 17, pp. 25-26). Plaintiff states:

> Specifically, the record in this matter establishes the B criteria, with a Full Scale IQ Score under 70, with significant deficits in Claimant's ability to understand, remember and apply information, as shown by the testing from Dr. Lederman [sic] and the IEP records, as well as the ability to concentrate, persist and maintain pace, as shown by her inability to be able to handle even a part-time job cleaning tables, and there is evidence that this disorder demonstrates and support that this disorder began prior to Claimant reaching age 22.

(Doc. 17, p. 26). Plaintiff does not go on to develop and support this assertion by citing to the record. It is not the responsibility of the Court to search the record for facts to support Plaintiff's argument. Again, "parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."[34] Plaintiff's "bare conclusory assertion[ ]" that she met the Paragraph B criteria is "not enough to merit consideration."[35]

Even if Plaintiff's assertion was considered, there would be no basis for remand. The ALJ analyzed whether the Paragraph B criteria were met and adequately supported and explained why she found that Plaintiff did not have "one extreme limitation or two marked limitations in a broad area of functioning." (Admin Tr. 19-20; Doc. 13-2, pp. 20-21). In evaluating the four broad areas of functioning,

---

[34] *Claxton*, 766 F.3d at 307.
[35] *McFadden v. Berryhill*, No. 16-1007, 2017 WL 1058911, at *1 (W.D. Pa. March 21, 2017).

the ALJ cited to reported daily activities, Dr. Ledermann's 2020 Intelligence Evaluation and 2019 Mental Status Evaluation, and treatment records from Plaintiff's other providers. (Admin Tr. 19-20; Doc. 13-2, p. 20-21).

As to understanding, remembering, or applying information, the ALJ detailed that Plaintiff recalled three out of three objects immediately and two out of three after a delay, and recited five digits forward and two digits backward and explained Plaintiff's other providers did not indicate any problems in these areas. (Admin Tr. 19; Doc. 13-2, p. 20). The ALJ also noted Plaintiff had a wide variety of daily activities supporting the ALJ's finding of a moderate limitation such as being able to prepare simple meals, do multiple step tasks, watch television, and play games on a computer and cellphone. *Id.* In interacting with others, the ALJ noted Plaintiff reports she generally gets along with others, is able to use social media to communicate, maintains relationships, and that her providers noted she was cooperative. *Id.* Regarding concentrating, persisting, or maintaining pace, the ALJ explained that while Plaintiff indicated difficulty working at a fast paced job and completing things at home, this was in part due to physical issues. (Admin. Tr. 20; Doc. 13-2, p. 21). The ALJ also explained that Plaintiff can complete simple chores and prepare simple meals, that her providers did not report concentration or focusing issues, and that at her mental status examination she was able to count, perform simple calculations and completed three digits with serial 3s. *Id.* Finally, as for

adapting or managing oneself, the ALJ noted that Plaintiff reported receiving help from her parents with finances, shopping, medication and medical appointment management, but that Plaintiff was also able to prepare simple meals, do chores, bathe, dress, and care for the family pet, and that her providers did not report difficulty in this area. *Id*. Thus, the ALJ's conclusion the Paragraph B criteria were not met was supported by substantial evidence and there is no basis for remand on this point.

Plaintiff alleges that the ALJ failed "to afford proper weight" to Dr. Ledermann's opinions (Doc. 17, p. 25). However, applying the proper regulations, the ALJ found Dr. Ledermann's opinions persuasive (Admin Tr. 26-27; Doc. 13-2, pp. 27-28). To the extent Plaintiff is attempting to argue that while the ALJ stated she found Dr. Ledermann's opinions persuasive but then did not treat them that way and incorporate adequate limitations based on those opinions while crafting the RFC, I do not agree. (Doc. 17, pp. 25-26). Plaintiff does not argue how she believes the ALJ erred in failing to incorporate limitations established by Dr. Ledermann's opinions other than making the conclusory statement that:

> Dr. Lederman's report also contained the following indications regarding Claimant, which were also not incorporated into the ALJ's RFC: (1) trouble with anxiety and concentration, (2) impaired memory, attention and concentration, and (3) below average intellectual functioning. (Admin. Tr. 865-871).

(Doc. 17, p. 25). Plaintiff also notes that Dr. Ledermann's

findings would limit Claimant to unskilled work after her intellectual function examination (she found that Claimant had marked limitations in her ability to carry out complex instructions or make judgments on complex work-related decisions, and Claimant has a Full Scale IQ (FSIQ) of 67, which is noted to be in the extremely low range) . . . .

(Doc. 17, p. 25).

However, the ALJ did effectively limit Plaintiff to unskilled work and did incorporate the limitations opined by Dr. Ledermann in the RFC. In her decision the ALJ wrote:

Regarding mental health, I have considered the October 2019 medical opinion of Kathleen Ledermann, PsyD, that found the claimant with no more than mild limitations in understanding, remembering and carrying out complex instructions and in making judgments on complex work-related decisions (Exhibit 8F). I have also considered the August 2020 medical opinion of Dr. Ledermann following an intelligence evaluation in which Dr. Ledermann found up to marked limitation in carrying out and making judgments on complex work-related decisions, up to moderate limitation in understanding and remembering complex instructions, and up to mild limitation in making judgment on simple, work-related decisions (Exhibit 14F).

(Admin. Tr. 26; Doc. 13-2, p. 27). This comports with Dr. Ledermann's opinions. Dr. Ledermann's October 2019 opinion was less restrictive than the August 2020 opinion, finding no restrictions in Plaintiff's ability to understand, remember, and carry out simple instructions and ability to make judgments on simple work-related decisions, none to mild limitation in Plaintiff's ability to understand, remember, and carry out complex instructions, and mild limitation in Plaintiff's ability to make judgments on complex work-related decisions. (Admin. Tr. 869; Doc. 13-7, p. 471).

In the August 2020 medical opinion following an intelligence evaluation, Dr. Ledermann found no restrictions in Plaintiff's ability to understand, remember, and carry out simple instructions, none to mild restriction in Plaintiff's ability to make judgments on simple work-related decisions, mild to moderate limitations in Plaintiff's ability to understand and remember complex instructions, and moderate to marked limitations in Plaintiff's ability to carry out complex instructions and ability to make judgments on complex work-related decisions. (Admin. Tr. 933; Doc. 13-7, p. 535). Dr. Ledermann found no restriction in Plaintiff's ability to interact appropriately with supervisors, co-workers, and the public as well as respond to changes in a routine work setting. (Admin Tr. 934; Doc. 13-7, p. 536). Dr. Ledermann opined Plaintiff had other capabilities affected as well such as her ability to concentrate, persist or maintain pace and the ability to adapt or manage oneself. *Id*. However, Dr. Ledermann stated only, "arthritis in wrist & [sic] knees impact on mobility." *Id*.

The ALJ incorporated the August 2020 more restrictive limitations opined by Dr. Ledermann in the RFC:

> [Plaintiff] is able to carry out short, simple instructions, to make simple decisions, to accept instructions and carry out directives, and to meet the basic mental demands of simple routine tasks on a sustained basis.

(Admin Tr. 21; Doc. 13-2, p. 22). Further, of the three jobs the ALJ cited to at her Step 5 analysis, one had a specific vocational preparation ("SVP") of one and two

had an SVP of two.[36] (Admin. Tr. 28; Doc. 13-2, p. 29). Unskilled work involves a job which "can usually [be] learn[ed] to do in 30 days, and little specific vocational preparation and judgment are needed."[37] An SVP of one indicates a short demonstration is needed to learn the job, and an SVP of two indicates anything beyond a short demonstration up to and including one month needed to learn the job.[38] Thus, the ALJ did incorporate Dr. Ledermann's limitations and effectively restricted Plaintiff to unskilled work and relied on three unskilled jobs in her Step 5 finding. There is no basis for remand on this point.

### iii.   Mr. Riggi[39]

Regarding the opinion of Michael Riggi, MA OTR/L CEES, Plaintiff argues:

The ALJ erred and abused her discretion in failing to afford proper weight to the FCE performed in this matter, which is an actual and objective measure of Claimant's physical abilities, from a comprehensive examination conducted by an independent medical

---

[36] "Specific Vocational Preparation is defined as the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." Dictionary of Occupational Titles Appendix C - Components of the Definition Trailer (II), 1991 WL 688702.

[37] 20 C.F.R. §§ 404.1568, 416.968.

[38] Dictionary of Occupational Titles Appendix C - Components of the Definition Trailer (II)(e), 1991 WL 688702.

[39] I note that in her decision, the ALJ mistakenly identifies Dr. Andrew Wong, M.D. as the individual who performed the functional capacity evaluation. (Admin Tr. 23, 26; Doc. 13-2, pp. 24, 27). Dr. Wong was the referring physician. Michael Riggi, MA OTR/L CEES, is the individual who actually conducted the evaluation. (Admin. Tr. 1064; Doc. 13-7, p. 666).

source, and which limitations from the FCE are consistent with the medical record, Claimant's testimony and other opinions regarding her limitations from physicians who actually examined Claimant. (Admin Tr. 1063-1085). Per the FCE, Claimant was limited to sedentary work, could not lift anything waist to shoulder, was limited to no more than 10 pound lifting and carrying, and both on only an occasional basis, weak hand grip strength, pinch grip and pulling, all of which tested very low and were noted to be with consistent effort by Claimant. (Admin Tr. 1063-1085).

(Doc. 17, p. 27).

In response, the Commissioner argues that the ALJ adequately articulated why she did not find Mr. Riggi's opinion to be persuasive.

It appears Plaintiff is arguing that the ALJ's persuasiveness determination regarding Mr. Riggi's opinion is unsupported by substantial evidence. However, this argument is "wholly undeveloped."[40] Plaintiff makes the conclusory allegation that the "ALJ erred and abused her discretion in failing to afford proper weight to the FCE" and that the FCE was consistent with "the medical record, Claimant's testimony and other opinions regarding her limitations from physicians who actually examined Claimant." (Doc. 17, p. 27). Plaintiff cites only to the FCE report itself, she does not cite to anything else in the record to support her assertion that the ALJ's persuasiveness determination was not supported by substantial evidence. Nor does Plaintiff otherwise expand upon this argument. Again, it is not the job of the Court

---

[40] *McFadden*, 2017 WL 1058911, at *1.

to search through the record to find evidence that supports Plaintiff's arguments; it is Plaintiff's responsibility to cite to facts supporting her arguments.[41] As above, Plaintiff's "bare conclusory assertion[ ]" that the ALJ's credibility determination was not supported by substantial evidence and that the FCE was supported by the record and testimony is "not enough to merit consideration."[42]

Nevertheless, even if Plaintiff's contention was considered, it would not prove to be a basis for remand. The ALJ's persuasiveness determination was supported by substantial evidence. In her decision, the ALJ wrote:

> I am not persuaded by the January 2021 medical opinion of Andrew Wong, MD, that found the claimant limited to sedentary work because the limitations are not consistent with the longitudinal treatment notes that showed improvement in symptomology and functioning (Exhibit 18F/3). Dr. Wong's opinion that the claimant demonstrated an ability to sit for thirty minutes, stand for ten minutes, and intermittently stand, sit, and walk of one hundred twenty minutes and that she cannot lift any weight from the waist to the shoulder, can lift ten pounds from the floor to waist, can lift ten pounds from floor to shoulder, and can carry ten pounds forty feet on an occasional basis is not consistent with the claimant's treatment records or with her daily activities. Initial limitations in strength and ranges of motion in the shoulders improved with physical therapy, which does not support the lifting limitation. The rheumatology records showed significant improvement with the rheumatoid arthritis symptoms and good tolerance of the medication regimen. She was able to walk long distances without knee pain and reported no hand pain in August 2020 (Exhibit 16F/47 and 57). These clinical findings in the longitudinal treatment records are inconsistent with Dr. Wong's opinion, which also noted the claimant did not provide consistent effort with grip strength testing. Further, I note that Dr.

---

[41] *Claxton*, 766 F.3d at 307.
[42] *McFadden*, 2017 WL 1058911, at *1.

Wong's opinion is based on a one-time evaluation without the benefit of a review of the treatment records and that the claimant reported never undergoing therapy for pain in the extremities, shoulders, and lower back, which is not correct as the claimant received physical therapy form Novacare Rehabilitation (Exhibit 1F). Finding the clinical findings and longitudinal treatment records inconsistent with the limitations, I am not persuaded by Dr. Wong's opinion.

(Admin Tr. 26; Doc. 13-2, p. 27), *see also* footnote 39 at p. 32.

To support her persuasiveness determination, the ALJ pointed to evidence in the longitudinal record inconsistent with Mr. Riggi's opinion: that records show the initial shoulder limitations improved with physical therapy, rheumatology records showed significant improvement overall, Plaintiff reported the ability to walk long distances without pain and reported no hand pain in August 2020. *Id*. Further, the ALJ noted Mr. Riggi did not review Plaintiff's treatment records and was informed that Plaintiff did not receive therapy for her pain in her shoulders, extremities and lower back when Plaintiff did receive therapy. *Id*. This is more than a mere scintilla of evidence[43] and enough that "a reasonable mind might accept as adequate to support a conclusion."[44] Thus, even considering Plaintiff's argument there is no basis for remand on this point.

---

[43] *Richardson*, 402 U.S. at 401.
[44] *Pierce,* 487 U.S. at 565.

### D.   WHETHER THE ALJ'S RFC IS SUPPORTED BY SUBSTANTIAL EVIDENCE

Plaintiff argues that the ALJ's RFC determination is unsupported by substantial evidence and the ALJ did not properly consider all of Plaintiff's "actual limitations from Claimant's multiple physical impairments . . . ." (Doc. 17, p. 15). Plaintiff argues:

> At Step 5, the ALJ limited Claimant to light work, with exertional and non-exertional limitations that do not account for many of the actual limitations from Claimant's identified severe impairments. (Admin Tr. 21- 27). As will be demonstrated herein, both the exertional and non-exertional limitations set forth by the ALJ in rendering Claimant's RFC are not supported by the record in this matter, nor are there competent medical opinions upon which the ALJ properly relied in setting forth Claimant's RFC. For instance, despite suffering from rheumatoid arthritis (in addition to other pain related disorders), none of which are adequately controlled, the ALJ neglected to account for Claimant's need for unscheduled breaks, ability to remain on task, or expected rate of absenteeism due to dealing with her pain related symptoms.

(Doc. 17, p. 14). Plaintiff then provides a list of eighteen "physical impairments" she appears to allege limit her ability to remain on task, require a need for unscheduled breaks and impact her rate of absenteeism that the ALJ failed to consider in crafting the RFC. (Doc. 17, p. 15). These impairments include ongoing pain, depression, anxiousness, insomnia and inflammation. *Id*. Plaintiff then describes how she believes those "records" are consistent with her testimony, providing a nearly one page and a half list of twenty-two (22) points Plaintiff testified to. (Doc. 17, pp. 15-17).

Page 35 of 45

Plaintiff then argues:

As it relates to the RFC from the ALJ, by holding Claimant to light work, the ALJ is making a finding that Claimant can lift 20 pound occasionally (up to 1/3 of the workday, or about 3 hours of the workday) and 10 pounds frequently (up to 2/3 of the workday, or about 5 hours of the workday. In making this finding regarding Claimant's RFC, the ALJ fails to explain how holding Claimant to the light exertional level, with the above lifting and carrying requirements, accounts for the documented issues with Claimant's pain in her neck, shoulder, arms, wrists and hands, all of which appear to worsen with repetition (even as noted by the ALJ) and result in fatigue (which occurred often during Claimant's physical therapy). In particular, the FCE, which is an independent measure of Claimant's ability to function physically, which results limited Claimant in the use of her bilateral upper extremities, should have been afforded more weight, due to the aforementioned issues, which were confirmed by (1) the medical record, and (2) Claimant's testimony and statements made as part of this claim/appeal. Even the records noted by the ALJ confirm weakness, stiffness and pain, all of which would be expected to limit someone in the use of their upper extremities, particularly due to flare ups from rheumatoid arthritis.

The ALJ erred and abused her discretion in failing to properly explain how Claimant could engage in sustained work activity while only being able to use her bilateral upper extremities for any use on a less than occasional basis, the need to be off task more than 15% of the workday, or the need to miss work more than 2 days per month, all of which would be the result of the combination of the limitations from Claimant's severe impairments, both mental and physical (which the Vocational expert opined would eliminate competitive employment), including her documented (1) pain in her left Achilles tendon and knee, with pain on ambulation, standing and sitting, (2) pain and weakness from fibromyalgia, with pain in her shoulders, neck, wrists and ankles, for the past 2 to 3 years, and which caused her to stop working, (3) an antalgic gait on examination, with difficulty ambulating, (4) pain from slipping and falling on her back, (5) weakness in both wrists, and (6) fatigue. (Admin Tr. 71-72, 400-401, 431, 447, 468, 513, 522, 567, 570, 573, and 602). Instead, the ALJ seems to focus on limitations in

treatment notes from 2019 (as do the State Agency Consultants, as opposed to evaluating Claimant's overall ability to work since her alleged onset date.

In addition, the ALJ erred in failing to consider the impact of Claimant's documented inability to sustain employment, including her last several jobs, including her actual last job, which ended due to issues related to Claimant's longstanding severe rheumatoid arthritis (including notations concerning testing that revealed elevated inflammatory markers), depression, anxiety and intellectual disability. Even the ALJ noted that Claimant has no past relevant work, despite working a number of jobs. It should also be noted that Claimant worked most, if not all, of her jobs on just a part-time basis, and as she failed at each job, this is further evidence of her inability to sustain employment on a full-time basis. The ALJ also could have considered a partially favorable decision, if she felt there was improvement in Claimant's ability to function.

(Doc. 17, pp. 17-19).

Later in her brief Plaintiff contends the RFC is not supported by any medical

source arguing:

The exertional limitations set forth by the ALJ do not mirror the findings of any medical source in this case, certainly none that examined Claimant personally, and are based upon the State Agency Consultants. The ALJ replaces the findings of the medical source noted above with her own conclusion regarding Claimant's exertional limitations, for which there is no basis in the medical record. Regarding the lack of any opinion of record which the ALJ relied upon regarding Claimant's exertional limitations, it is well established that "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant". Doak v Heckler, 790 F.2d 26, 29 (3d Cir. 1986) ("No physician suggested that the activity Doak could perform was consistent with the definition of light work set forth in the regulations, and therefore the ALJ's conclusion that he could is not supported by the record). The RFC in this matter set forth by the ALJ

is not supported by any physician of record, and are in fact in contradiction with the opinions from the CE Physician noted above, and the FCE, which determinations were made by medical sources/ physicians who were tasked with determining Claimant's ability to function. (Admin Tr. 731-746). If the ALJ felt that there was insufficient evidence and medical opinions of record regarding Claimant's RFC, she should have obtained a Medical Expert, or she should have sent Claimant for additional Consultative Examinations, which did not occur in this matter. Finally, the ALJ could have considered the limitations from the FCE submitted after the hearing by Claimant.

(Doc. 17, pp. 27-28).

In response, the Commissioner argues that the ALJ did discuss all relevant evidence when crafting the RFC limiting Plaintiff to light work with limited manipulation. (Doc. 23, p. 30). The Commissioner cites to the ALJ's explanation that Plaintiff's treatment had been routine and conservative and that medication and physical therapy had dramatically improved Plaintiff's symptoms. *Id*. The Commissioner also argues that the ALJ is not required to base the RFC on a matching medical opinion and that Plaintiff's reliance on *Doak* is misplaced. (Doc. 23, p. 31). The Commissioner asserts that Plaintiff's allegations that the ALJ failed to account for the need for unscheduled breaks, a limited ability to remain on task and absenteeism are unsupported by both Plaintiff and the record. (Doc. 23, pp. 33-34). Finally, the Commissioner argues that whether to call a medical expert or send a claimant for additional consultative examinations are soundly within the ALJ's discretion. (Doc. 23, p. 34).

Turning first to Plaintiff's statement, "If the ALJ felt that there was insufficient evidence and medical opinions of record regarding Claimant's RFC, she should have obtained a Medical Expert, or she should have sent Claimant for additional Consultative Examinations, which did not occur in this matter." (Doc. 17, p. 28). Plaintiff does not otherwise expand on this statement or argue that the ALJ abused her discretion in failing to obtain a medical expert or send Plaintiff for an additional consultative examination. Nor does it appear the ALJ did abuse her discretion. In this case, "a wealth of medical records from the relevant period were available and included in the record. Accordingly, our precedents did not compel the Commissioner to seek out a medical expert in this case."[45]

Plaintiff also states, "Finally, the ALJ could have considered the limitations from the FCE submitted after the hearing by Claimant." (Doc. 17, p. 28). The ALJ did consider these limitations and found them to be unsupported by the record as discussed in Section IV(C)(iii).

Regarding Plaintiff's brief one-sentence argument that the ALJ and State Agency Consultants focused on limitations in 2019 treatment notes and did not evaluate Plaintiff's overall ability to work since her alleged onset date, Plaintiff does not cite to anything she alleges the ALJ failed to consider. (Doc. 17, p. 18). It is not

---

[45] *Kushner v. Comm'r Soc. Sec.*, 765 F. App'x 825, 830 (3d Cir. 2019).

the job of the Court to search to find evidence in the record that supports Plaintiff's arguments; it is Plaintiff's responsibility to cite to facts in support.[46] It appears the ALJ did consider the entire medical record, discussing and summarizing treatment records from 2014, 2015, 2017, 2018, 2019, 2020, and 2021. (Admin Tr. 22-26; Doc. 13-2, pp. 23-27). The ALJ then went through and explained in detail how persuasive she found the medical opinions of record spanning from 2019 to 2021. (Admin. Tr. 25-27; Doc. 1302, pp. 26-28).

As to Plaintiff's contention that the ALJ did not account for her need for unscheduled breaks, ability to remain on task, or expected rate of absenteeism, or explain how she could still engage in sustained work activity with them, these limitations are not discussed in the record. (Doc. 17, pp. 14-18, 22). Plaintiff states that "it is reasonable" that Plaintiff's "fibromyalgia, foot, knee and ankle issues, pain in her shoulders, neck, lumbar spine and [] significant limitations with regards to her wrist" would cause these limitations. (Doc. 17, pp. 21-22). Plaintiff cites to pages of the medical record that discuss the symptoms, but not to anything indicating these limitations would be necessary due to those symptoms. (Doc. 17, p. 14-18). Plaintiff also cites to the hearing transcript where her lawyer defined and suggested these limitations in posing a hypothetical to the vocational expert. (Admin. Tr. 71; Doc.

---

[46] *Claxton*, 766 F.3d at 307.

13-2, p. 72); (Doc. 17, p. 18). However, Plaintiff does not point to where the need for these limitations are discussed in the medical record. It seems the only place discussion of these limitations appears is at the hearing when they were suggested by Plaintiff's attorney. (Admin. Tr. 71; Doc. 13-2, p. 72). The ALJ therefore did not err in failing to consider these purported limitations as defined and alleged by Plaintiff's counsel.

Regarding Plaintiff's argument that the ALJ's RFC determination is unsupported by a medical opinion and fails to explain how the RFC accounts for Plaintiff's pain or inability to sustain employment, I am unpersuaded. (Doc. 17, pp. 17-19, 27-28). As described above in Section IV(B), the ALJ took into consideration Plaintiff's pain when crafting the RFC. Plaintiff argues her last employment ended because of her rheumatoid arthritis, depression, anxiety and intellectual disability. (Doc. 17, p. 19). While the ALJ may not have explicitly discussed Plaintiff's inability to sustain employment, as discussed above in Sections IV(B) and IV(C)(ii), she did discuss the alleged underlying causes of Plaintiff's alleged inability to hold a job: Plaintiff's rheumatoid arthritis, depression, anxiety and intellectual disability. (Admin Tr. 19-27; Doc. 13-2, pp. 20-28).

Plaintiff's primary contention, however, is that the exertional limitations set forth by the ALJ fail to mirror the findings of any medical source of record and are in contradiction with the opinions by the CE and FCE. (Doc. 17, pp. 27-28). Plaintiff

cites to *Doak* for the proposition that "rarely can a decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant."[47] (Doc. 17, pp. 27-28). However, in this case there were multiple assessments of Plaintiff's functional abilities by a physician that the ALJ relied on in making her RFC determination. (Admin. Tr. 25-27; Doc. 13-2, pp. 26-28). Further, as the Commissioner cites (Doc. 23, p. 32), in *Myers v. Berryhill*, Judge Brann confirmed:

> Nothing in the Social Security Act or governing regulations requires the ALJ to obtain matching "opinion" evidence in order to fashion a claimant's RFC. The controlling regulations are explicit that the formulation of a claimant's RFC from the broad record before him is an administrative responsibility for the ALJ, not a treating or other physician.[48]

That said, an examination of the RFC reveals each exertional limitation is supported by either a medical opinion or a prior administrative medical finding made by acceptable medical sources.[49]

The ALJ found that Plaintiff could occasionally lift and/or carry up to twenty pounds, supported by the medical opinions of Dr. Kneifati, and State Agency Consultants Dr. Simmons, and Dr. Wilson. (Admin Tr. 20-21, 83, 95, 113, 131, 878;

---

[47] *Doak v. Heckler*, 790 F.2d 26, 29 (3d Cir. 1986).
[48] *Myers v. Berryhill*, 373 F. Supp. 3d 528, 538 (M.D. Pa. 2019).
[49] Medical opinions and prior administrative medical findings are considered together and evaluated using the same factors. 20 C.F.R. §§ 404.1520c, 416.920c.

Doc. 13-2 pp. 21-22; Doc. 13-3 pp. 10, 22, 40, 58; Doc. 13-7, p. 480). The ALJ also found Plaintiff could frequently lift and/or carry up to ten pounds, stand and/or walk for about six-hours, and sit for about six hours in an eight-hour workday. (Admin Tr. 21, Doc. 13-2 pp. 22). These limitations are supported by the medical opinions of Dr. Simmons and Dr. Wilson. (Admin. Tr. 83, 95, 113, 131; Doc. 13-3 pp. 10, 22, 40, 58). Finally, the ALJ found Plaintiff can frequently handle bilaterally as supported by the medical opinions of Dr. Kneifati, Dr. Simmons, and Dr. Wilson. (Admin Tr. 21, 84, 96, 113, 131, 880; Doc. 13-2, p. 22; Doc. 13-3, pp. 11, 23, 40, 58; Doc. 13-7, p. 482).

As the Commissioner notes, this is a case where the ALJ crafted an RFC falling in between medical opinions, which is different than an ALJ finding a claimant not disabled where all medical opinions indicate the claimant is disabled.[50] While the RFC does not follow Mr. Riggi's evaluation of a sedentary work category and Dr. Kneifati's opinion regarding Plaintiff's abilities to stand and walk, other medical opinions support the ALJ's determination. Further, as discussed in Sections IV(C)(i) and (iii), the ALJ adequately explained why she did not find Mr. Riggi's functional capacity evaluation and Dr. Kneifati's opinion on standing and walking limitations to be persuasive and why she found the opinions of Dr. Simmons and Dr.

---

[50] *Durden*, 191 F. Supp. 3d at 455.

Wilson to be persuasive. Again, the ALJ is entitled to credit parts of a medical opinion and not the whole, and craft an RFC using different parts of the multiple opinions.[51] In finding Dr. Kneifati's opinion partially persuasive and Mr. Riggi's functional capacity evaluation unpersuasive, the ALJ did not replace medical opinions with her own conclusions regarding Plaintiff's exertional limitations. Instead, she chose between the conflicting medical opinions of Dr. Simmons, Dr. Wilson, and Dr. Kneifati and Mr. Riggi's functional capacity evaluation. In sum, substantial evidence supports the ALJ's RFC determination in this case. Remand is not warranted on this basis.

On this record it is possible that the ALJ could have reached an opposite conclusion, but it is not the Court's province to second guess the ALJ. There is substantial evidence supporting either determination (disabled or not disabled). The ALJ evaluated all the evidence and adequately supported her decision.

[The next page contains the Conclusion]

---

[51] *Id.*

V.     **CONCLUSION**

Accordingly, I find that Plaintiff's request for reversal of the administrative

decision, remand for a new hearing, or an award of benefits be Denied as follows:

(1)     The final decision of the Commissioner is AFFIRMED.

(2)     Final judgment will be issued in favor of the Commissioner.

(3)     Appropriate Orders will be issued.

Date: July 31, 2023                          BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge